## COLLINS v. ATLANTIC OIL PRODUC-ING CO.
### No. 7510.

Circuit Court of Appeals, Fifth Circuit.
Dec. 11, 1934.

Charles L. Morgan and William E. Allen, both of Fort Worth, Tex., for appellant.

Snowden M. Leftwich, of Dallas, Tex., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

By a suit at law in the District Court, C. O. Collins sought to recover of Atlantic Oil Producing Company $24,000, with interest and costs of suit; it being the remainder of the consideration due for assignments made by him to the company of certain oil and gas leases. A general demurrer was sustained, and this appeal followed. The petition incorporates the leases to Collins running for primary terms of ten years from September, 1925, and November, 1926, the preliminary contracts for their sale in July, 1929, and the formal assignments executed September, 1929. The contracts and assignments show that a total of $2,400 was paid in cash for the transfer of the leases, and a total of $24,000 additional was to be paid out of fractional parts of the oil and gas produced; each assignment stating: "It is the intention that C. O. Collins shall receive a total of Twelve Thousand dollars from oil and/or gas from the above fractions only if, as and when oil or gas is produced, and

that there shall be no drilling obligations on the part of the Atlantic Oil Producing Company in order to secure this oil or gas payment." It is alleged that delay rentals as provided in the leases were paid by the company from year to year until 1933, when the company failed and neglected to pay and the leases lapsed and became of no effect, the company later executing releases to the lessors, all without the knowledge or consent of Collins; and that thereby the company became absolutely obligated to pay him the $24,000 conditionally promised. Collins asserts that, when one is bound to pay on a condition and by his voluntary act makes the occurrence of the condition impossible, he becomes liable as though the condition had happened, citing Dill v. Pope, 29 Kan. 289; Linn v. Butler, 8 Colo. 355, 8 P. 588; Teachenor v. Tibbals, 31 Utah, 10, 86 P. 483; Marvin v. Rogers, 53 Tex. Civ. App. 423, 115 S. W. 863; E. I. Du Pont de Nemours Co. v. Schlottman (C. C. A.) 218 F. 353. He also contends that a covenant should be implied in the assignments that the company would pay delay rentals until the end of the leases or until oil be produced. The cases cited were like this one to the extent that in each a balance was to be paid out of mining or other operations which were prevented by another disposition made of the mine or plant. They differ in that in each the disposition enriched the debtor at the expense of the creditor, and there was nothing to suggest that the creditor would not have become entitled to his debt if the other disposition had not been made.

In Dill v. Pope the mine was sold for twice the amount conditionally owing. In Linn v. Butler it was partly sold and partly consolidated with another mine, as a result of which the earnings of the original mine could not be distinguished, but apparently there were earnings. In Teachenor v. Tibbals the mine was sold outright, and there were express findings that sufficient ore had been extracted to pay the plaintiff. In Marvin v. Rogers the purchaser of a controlling interest in a mercantile corporation was to pay $500 more if the corporation should get a new lease on its place of business or should continue to occupy it for ten months. He caused a sale of the business before the ten months elapsed, and was held liable; but the jury expressly found that it was reasonably probable that the store would have been occupied for the ten months but for the sale, and that the sale was made to prevent occupancy for the ten months. In the Schlottman Case the additional purchase money was to be paid if the purchased plant proved worth a certain sum and turned out goods at a certain cost. The plant was sold at a profit, and the second purchaser dismantled it. It was held that an obligation was implied to operate the plant for the test, and that when the test was prevented the creditor was entitled to show its value by other means, and having done that he was allowed to recover.

We think that the right to recover money conditionally owing notwithstanding the condition has not happened because of some act of the debtor rests on an estoppel of the debtor to insist upon the condition, as stated in Dill v. Pope, supra. The estoppel depends on the circumstances, and the plaintiff must allege such circumstances as ought to estop. If the debtor has acted for the purpose of defeating a conditional obligation which would probably have accrued, or for the purpose of obtaining or retaining a benefit at the creditor's expense, he ought not to succeed. But, if there was no likelihood of the condition ever happening, and the debtor acted in good faith to relieve himself of a useless burden, there would be no justice in converting the conditional into an absolute obligation. In the present case Collins had leases of a usual form in which drilling had to be begun within a year from date or the lease would terminate, unless before that time payment of a stated sum was made "which shall operate as rental and cover the privilege of deferring the commencement of a well for twelve months from said date; in like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods successively." He had done no drilling when he assigned in 1929, but had been paying rentals. There was no covenant in the leases nor in the assignments to pay any rentals, but they were optional for "the privilege of deferring" the drilling, for lack of which the lease would automatically cease. The effect of a simple assignment would be to put the assignee in the shoes of Collins, with just his rights and obligations as respects the lessor. The obligations between assignor and assignee are what the contract of assignment makes them in the light of the provisions of the lease assigned. The assignments stipulated for cash payment of $24,000 for these undeveloped leases in what, so far as appears, was undeveloped territory, with $24,000 more to be paid if, as, and when gas or oil is produced, with an express provision that the assignee was not obligated to produce any. This fairly means that the

assignor relied on the assignee's having an investment of $24,000 and being entitled to receive by far the larger fractions of oil or gas produced, to induce it to make all the efforts to produce that the prospects would warrant.

The same facts would prompt the assignee to pay annual rentals so long as prudent, and no agreement was exacted that they should be paid. Such an agreement is not to be implied, for that would be to add a term to the assignment contract, and put a burden on the assignee which was no part of the leases and which we cannot be sure was intended to be assumed in the assignment of them. The terms of the assignments indicate that Collins, having got $24,000 cash, took a chance on obtaining more through the operations of the company, leaving all decisions entirely to its judgment. He was entitled to good faith; and, so far as appears, was not denied it. The company paid rentals till 1933; the leases then having two years and three years, respectively, to run. There is no allegation that any oil or gas was in fact producible from the leases, that any had been produced in the vicinity, or that there was any longer any prospect of finding them there, or that the company received anything for the releases. For aught that appears, the company decided that there was no chance of production, and preferred to lose its original investment of $24,000 and the rentals since paid rather than to put up more, and abandoned the leases. It breached no obligation to Collins in doing so, and did not come to owe him the $24,000 which was due only from oil and gas which was never produced, and, so far as is alleged, does not exist. Complaint is made that Collins was not notified of the intended abandonment, but it is not alleged that he would have paid the rentals or that the leases were worth prolonging. If notice was due, the mere failure to give it would not create an obligation to pay $24,000, but only the damage done, and none is here shown. We are supported in our conclusion that no right to recover is set up by the Texas decisions in Greenwood & Tyrrell v. Helm (Tex. Civ. App.) 264 S. W. 221; Simms Oil Co. v. Colquitt (Tex. Com. App.) 296 S. W. 491; Id. (Tex. Com. App.) 2 S.W.(2d) 421; and by Matthews v. Ramsay-Lloyd Oil Co., 121 Kan. 75, 245 P. 1064. It may be, as appellant claims, that there are facts which would, if alleged, make a different case. We rule only on the allegations of the present petition, and affirm the judgment dismissing it.

Judgment affirmed.